**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Criminal Action No.: 22-345 (RC) |
| | : | |
| VERNON HEDRICK, | : | Re Document No.: 37 |
| | : | |
| Defendant. | : | |

### MEMORANDUM OPINION

### DENYING DEFENDANT'S MOTION FOR RECONSIDERATION

### I. INTRODUCTION

Defendant Vernon Hedrick brought a motion to suppress tangible evidence, *see* Mot. to. Suppress Tangible Evidence ("Mot. Suppress"), ECF No. 12, and the Court denied the motion, s*ee* Min. Order, Feb. 24, 2023. Mr. Hedrick entered a plea of guilty on April 6, 2023. *See* Min. Order, Apr. 6, 2023. Now, before sentencing, Mr. Hedrick brings a motion for reconsideration of the motion to suppress. *See* Mot. for Reconsideration of Decision on Mot. to Suppress Tangible Evidence ("Mot. Reconsider"), ECF No. 37. The government opposes the motion. *See* Opp'n to Mot. for Reconsideration of Decision on Mot. to Suppress Tangible Evidence ("Opp'n Mot."), ECF No. 38. For the reasons stated below, the Court will deny the motion.

### II. BACKGROUND

Mr. Hedrick was charged in a one-count indictment with unlawful possession of a firearm and ammunition by a person previously convicted of a crime punishable by imprisonment for a term exceeding one year, in violation of 18 U.S.C. § 922(g)(1). Indictment at 1, ECF No. 6. He moved to have all tangible objects, including the firearm and ammunition, suppressed as evidence. *See* Mot. Suppress at 4. Mr. Hedrick argued that he was seized, without probable

cause, when Investigator Bryan Madera asked him to squeeze his bag, and he complied. *See* Mot. Reconsider at 1. The Court held an evidentiary hearing on the motion. *See* Evidentiary Hr'g. Tr., Jan. 24, 2023. Another person who was at the scene, Anthony Blackwell, testified that Investigator Madera asked Mr. Hedrick to "squeeze the bag." *Id.* 67:25-68:4; 69:14-17. Investigator Madera denied that he asked Mr. Hedrick to squeeze his bag. *Id.* 42:25-43:2.

The Court denied the motion to suppress. *See* Ruling Hr'g Tr., ECF No. 25. The Court identified that "the critical question in this case is whether Investigator Madera's alleged statement to Mr. Hedrick to squeeze the bag contributed to a show of authority rising to the level of a seizure under the Fourth Amendment." *Id.* 6:4-7. Despite the factual dispute as to whether Investigator Madera asked Mr. Hedrick to "squeeze the bag," the Court found that even if he did, and if it was a command, Investigator Madera's statement and Mr. Hedrick's compliance was not a seizure. *See id.* 6:16-21. As the Court put it, "[i]n this case, even if Investigator Madera told Mr. Hedrick to squeeze the bag, the totality of the circumstances show that a reasonable person would have believed they were free to leave." *Id.* 8:1-3.

The government later extended a guilty plea offer, *see* Plea Agreement, ECF No. 28, which Mr. Hedrick signed, *id.* at 10, and verbally agreed to at a hearing.[1] *See* Min. Order, Apr. 6, 2023. After this guilty plea, but before the scheduled sentencing date, the D.C. Circuit issued a decision in *United States v. Gamble*, 77 F.4th 1041 (D.C. Cir. 2023). In that case, the Circuit held that an officer seized a criminal defendant when he commanded the defendant to show his waistband. *Id.* at 1046. Although sentencing in this case was scheduled for August 17, 2023, *see*

---

[1] Mr. Hedrick does not argue in the motion that his plea was involuntary or that this hearing was deficient in any regard.

Min. Order, Apr. 6, 2023, Mr. Hedrick filed a motion to continue the sentencing, which the Court granted.  Min. Order, Aug. 11, 2023.

Mr. Hedrick then filed the present motion, arguing that the Court should reconsider its prior decision in light of *Gamble*.  *See* Mot. Reconsider; *see also* Reply Sup. Mot. for Reconsideration of Decision on Mot. to Suppress Tangible Evidence ("Reply"), ECF No. 39. The government opposed the motion, arguing that Mr. Hedrick's guilty plea forecloses the motion, and that even if the Court did reconsider its prior ruling, *Gamble* is factually distinct and not controlling.  *See* Opp'n Mot.  On September 13, 2023, the Court held a hearing on the motion.  Min. Order, Sep. 13, 2023.

### III.  LEGAL STANDARD

"Motions for reconsideration are committed to the sound discretion of the trial court." *United States v. Trabelsi*, No. 06-cr-89, 2015 WL 5175882 (RWR), at *2 (D.D.C. Sept. 3, 2015) (quoting *Judicial Watch, Inc. v. U.S. Dep't of Energy*, 319 F. Supp. 2d 32, 34 (D.D.C. 2004)). But "[u]nlike the Federal Rules of Civil Procedure, neither the Federal Rules of Criminal Procedure nor the Local Criminal Rules for this district provide for motions for reconsideration." *United States v. Bagcho*, 227 F. Supp. 3d 28, 31 (D.D.C. 2017).  "Although the Federal Rules do not specifically provide for motions for reconsideration in criminal cases, the Supreme Court has recognized, in dicta, the utility of such motions."  *United States v. Raymond*, No. 21-cr-380 (CKK), 2023 WL 6879875, at *1 (D.D.C. Oct. 18, 2023) (quoting *United States v. Ferguson*, 574 F. Supp. 2d 111, 113 (D.D.C. 2008)).  As a result, "judges in this district have assumed, without deciding, that they may consider motions for reconsideration in criminal cases."  *United States v. Malone*, No. 13-cr-231-01 (EGS), 2023 WL 5833677, at *1 (D.D.C. Sept. 8, 2023) (quoting *Bagcho*, 227 F. Supp. 3d at 31).

A motion to reconsider an interlocutory decision such as a "motion to suppress" may be granted "as justice requires." *United States v. Hassanshahi*, 145 F. Supp. 3d 75, 80 (D.D.C. 2015) (internal quotation marks and citation omitted); *see also United States v. Dynamic Visions, Inc.*, 321 F.R.D. 14, 17 (D.D.C. 2017) (same). Still, "motions for reconsideration are disfavored." *United States v. All Assets Held at Bank Julius*, 502 F. Supp. 3d 91, 95 (D.D.C. 2020) (internal quotation marks and citation omitted). To prevail on a motion for reconsideration, the moving party bears the burden of demonstrating "that (1) there has been an intervening change in controlling law; (2) there is new evidence; or (3) there is a need to correct clear error or prevent manifest injustice." *Ferguson*, 574 F. Supp. 2d at 113; *see also Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996). Finally, a motion for reconsideration "cannot be used as an opportunity to reargue facts and theories upon which a court has already ruled, nor as a vehicle for presenting theories or arguments that could have been advanced earlier." *Estate of Gaither ex rel. Gaither v. District of Columbia*, 771 F. Supp. 2d 5, 10 (D.D.C. 2011) (internal quotation marks and citation omitted).

## IV.  ANALYSIS

### A. Mr. Hedrick's Motion to Reconsider Without Attempting to Withdraw His Guilty Plea is Highly Irregular

Mr. Hedrick, who admitted that he is guilty of the present offense and has not tried to withdraw that guilty plea, nonetheless asks the Court to reconsider his motion to suppress evidence related to that offense. The government argues, *see* Opp'n Mot. at 2, that Mr. Hedrick has presented no prior examples of a court in this district, or any other, entertaining a motion to reconsider at this juncture of a proceeding. The Court has also not located any such examples. Accordingly, the procedural irregularity here strongly militates against reconsideration of the motion to suppress.

4

The Court may allow a defendant to withdraw a guilty plea prior to sentencing when a defendant has shown "a fair and just reason for requesting the withdrawal." Fed. R. Crim. Pro. 11(d)(2)(B). When a defendant seeks withdrawal, courts in this Circuit consider the following factors: "(1) whether the defendant has asserted a viable claim of innocence; (2) whether the delay between the guilty plea and the motion to withdraw has substantially prejudiced the government's ability to prosecute the case; and (3) whether the guilty plea was somehow tainted." *United States v. Taylor*, 139 F.3d 924, 929 (D.C. Cir. 1998) (internal quotation marks and citation omitted); *see also United States v. Raymond*, 640 F. Supp. 3d 9, 13–14 (D.D.C. 2022) (applying *Taylor*). "[P]resentence withdrawal motions should be 'liberally granted,' [but] they are 'not granted as a matter of right.'" *United States v. Thomas*, 541 F. Supp. 2d 18, 23 (D.D.C. 2008) (quoting *United States v. Ahn*, 231 F.3d 26, 30 (D.C. Cir. 2000)). But again, that analysis does not apply to the present motion, where Mr. Hedrick does not seek to withdraw his guilty plea. Reply at 2.

Therefore, as an initial matter, the government argues that the Plea Agreement means that Mr. Hedrick has expressly waived his right to challenge evidence, including in a motion for reconsideration:

> Your client understands that by pleading guilty in this case your client agrees to waive certain rights afforded by the Constitution of the United States and/or by statute or rule. Your client agrees to forego the right to any further discovery or disclosures of information not already provided at the time of the entry of your client's guilty plea. Your client also agrees to waive, among other rights, the right to plead not guilty, and the right to a jury trial. If there were a jury trial, your client would have the right to be represented by counsel, to confront, and cross-examine witnesses against your client, *to challenge the admissibility of evidence offered against your client*, to compel witnesses to appear for the purpose of testifying and presenting other evidence on your client's behalf, and to choose whether to testify. If there were a jury trial your client chose not to testify at that trial, your client would have the right to have the jury instructed that your client's failure to testify could not be held against your client. Your client would further have the right to have the jury instructed that your client is presumed innocent until proven guilty,

5

       and that the burden would be on the United States to prove your client's guilt beyond a reasonable doubt.

Plea Agreement at 6 (emphasis added).

      The Court does not agree with the government's reading of this language, and finds that the Plea Agreement does not explicitly waive Mr. Hedrick's right to "challenge the admissibility of evidence" but, rather, merely discusses the process and rights related to a jury trial. *Id.* The relevant sentence begins with a hypothetical – "if there were a jury trial" – and also lists rights that Mr. Hedrick clearly did not relinquish in the Plea Agreement, such as "the right to be represented by counsel." *Id.*

      Regardless, Mr. Hedrick's guilty plea raises serious doubt about whether the Court should take up his motion to reconsider. Mr. Hedrick is apparently making an intentional strategic choice to preserve the benefit of his guilty plea while attempting to relitigate his motion to suppress, and admits that "should the Court reconsider the motion and grant the motion to suppress, Mr. Hedrick may ask the Court to allow him to withdraw his guilty plea[.]" Reply at 2. However, Mr. Hedrick has offered no supporting caselaw for his argument that "[t]he Court may address the motion for reconsideration and, if necessary, later consider a motion to withdraw the guilty plea." Reply at 2.

      Indeed, the Court sees Mr. Hedrick's maneuver as inconsistent with his admission of guilt. A guilty plea is "a break in the chain of events which has preceded it in the criminal process." *Tollett v. Henderson*, 411 U.S. 258, 267 (1973). That means, "as the D.C. Circuit has observed, '[a] knowing and voluntary guilty plea ordinarily waives all constitutional claims, including those arising under the Fourth Amendment, relating to the deprivation of rights occurring prior to the entry of the plea.'" *United States v. Flynn*, 411 F. Supp. 3d 15, 48 (D.D.C.

6

2019) (quoting *United States v. Fincham*, No. 99-3062, 2000 WL 274210, at *1 (D.C. Cir. Feb. 15, 2000)).

The Court has not located any examples where a motion to suppress—or a motion to reconsider a ruling on a motion to suppress—was made without an accompanying motion to withdraw the guilty plea.  Consider *United States v. Magruder*, No. CR 19-203 (CKK), 2021 WL 5769462, at *10 (D.D.C. Dec. 6, 2021), where the defendant agreed to a guilty plea and then before sentencing sought to withdraw that plea while arguing that evidence in the case should be suppressed for several reasons, including that he was arrested and searched without probable cause.  The court rejected his motion to withdraw his guilty plea.  *Id.*  There was no suggestion that the defendant could press his evidentiary arguments while maintaining his guilty plea.

Relatedly, while out-of-circuit, in *United States v. Hudak*, No. 02 CR. 853 (JFK), 2003 WL 22170606, at *4 (S.D.N.Y. Sept. 19, 2003), a defendant sought to "withdraw his plea … to allow him the opportunity to challenge the validity of the search warrant."  *Id.*  The court noted that "should the search warrant be deemed valid, [the defendant] asserts that he will again plead guilty to the one-count indictment."  *Id.*  In facts reminiscent of the present motion, the *Hudak* court found that the defendant had been "buoyed" by a decision issued after his guilty plea, and thus had "reevaluated the strength of the government's case against him."  *Id.* at *5.  Citing Second Circuit precedent that aligns with Supreme Court and D.C. Circuit caselaw on guilty pleas, the court held that the defendant's guilty plea waived his right to challenge the constitutionality of a search.  *Id.*  In other words,  "before the Court can consider a challenge to the validity of the warrant, [the defendant] must first meet his burden of proving to the Court that his plea should be withdrawn."  *Id.*

7

Th cases described above are consistent with a general pattern where other courts have refused to address post-plea motions to suppress without first considering a motion to withdraw the plea. What's more, courts often reject motions to withdraw in this context. *See id.* at *6, (denying motion to withdraw); *Magruder,* 2021 WL 5769462 at *10 (denying motion to withdraw, as discussed above, and cataloguing cases from other circuits); *see also United States v. Jones,* 74 F. App'x 664, 668 (7th Cir. 2003) ("[T]here is no support for [the defendant's] assertion that courts should follow a per se rule that defendants can withdraw guilty pleas if Fourth Amendment issues remain to be litigated. To the contrary, it is well-established that defendants waive such defenses by pleading guilty."); *United States v. Quijada*, 40 F. App'x 344, 345 (8th Cir. 2002) (per curiam) (holding that the defense counsel's "failure to seek suppression of [the defendant's] custodial statements . . . does not provide a fair and just reason to allow [the defendant] to withdraw his guilty plea."); *United States v. Marholz*, No. 95-50366, 1996 WL 285704, at *1 (9th Cir. May 29, 1996) ("[A] defendant is not entitled to withdraw a valid plea of guilty on the basis of alleged constitutional violations that occurred before entry of the plea."); *United States v. Schmidt*, No. 5:02CR0227, 2003 WL 22225583, at *2–3 (N.D.N.Y. Aug. 13, 2003) ("Defendant's belated desire to move to suppress evidence seized from his residence evinces nothing more than a revaluation of the Government's case against him.").

The Court recognizes that *Gamble* was decided after Mr. Hedrick's plea, and that instead of raising his suppression arguments for the first time after his plea, he brings a motion to reconsider the Court's decision on his prior attempt to suppress. But Mr. Hedrick assumed the risk of a new potentially favorable decision when he chose to plead guilty, as the D.C. Circuit explained when confronting a request to withdraw:

> In *Brady v. United States*, the Supreme Court held that "[a] defendant is not entitled to withdraw his plea merely because he discovers long after the plea has been accepted that

8

> his calculus misapprehended ... the likely penalties attached to alternative courses of action." 397 U.S. 742, 756–57 (1970). The same principle applies here. A guilty plea does not automatically become tainted if a change in the law alters a variable that the defendant considered when he decided to plead guilty. *See id.*; *see also United States v. Sahlin*, 399 F.3d 27, 31 (1st Cir. 2005) ("[T]he possibility of a favorable change in the law occurring after a plea is one of the normal risks that accompany a guilty plea.") (citing *Brady*, 397 U.S. at 757).

*United States v. Robinson*, 587 F.3d 1122, 1129 (D.C. Cir. 2009).[2]

If that assumption-of-risk principle governs whether a defendant may withdraw his guilty plea— and defendants cannot bring new suppression motions without withdrawing their guilty pleas—it must also weigh heavily here, where Mr. Hedrick seeks reconsideration of a suppression motion.[3] So because Mr. Hedrick has not sought to withdraw his plea, he is subject to the rule that when "a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea."[4] *United States v. Chammas*, No. 16-cr-00171 (CRC), 2018 WL 6680924, at *5 (D.D.C. Dec. 19, 2018) (citing *Tollett*, 411 U.S. at 267). As Mr. Hedrick notes, neither *Tollett* nor

---

[2] The Second Circuit has expressed a similar view when considering whether a plea agreement's appeal waiver was enforceable, and noted that "the possibility of a favorable change in the law after a plea is simply one of the risks that accompanies pleas and plea agreements." *United States v. Morgan*, 406 F.3d 135, 137 (2d Cir. 2005).

[3] The Court does not take *Robinson*, 587 F.3d 1122, 1128–29 to mean that a significant change in the law can never be a valid reason for withdrawing a guilty plea. "There is some authority for the proposition that a post-guilty plea, pre-sentence change in Supreme Court precedent that bears on a defendant's legal innocence may constitute a fair and just reason for permitting the withdrawal of the plea." *United States v. Mays*, 593 F.3d 603, 607 (7th Cir. 2010) (citing *United States v. Ortega-Ascanio*, 376 F.3d 879 (9th Cir. 2004) and *United States v. Presley*, 478 F.2d 163, 167-68 (5th Cir. 1973)).

[4] The plea agreement did not contain any exceptions for a post-plea motion to reconsider. *See United States v. Scurry*, 992 F.3d 1060, 1066 (D.C. Cir. 2021) (finding that "by pleading guilty" the defendant "waived any challenge to the government's evidence" other than "expressly reserved challenges"); *see generally* Plea Agreement.

*Chammas* concerned a motion to reconsider prior to sentencing. But he offers nothing to distinguish their reasoning from application to the present circumstances, where he remains legally guilty but will seemingly try to withdraw his plea if he first procures a favorable evidentiary ruling. *See* Reply at 2.

To countenance Mr. Hedrick's plans could lead to instability in the guilty plea process; the time between plea and sentencing could become open season for motions to reconsider based on any Circuit or Supreme Court decisions released during that period. Additionally, Mr. Hedrick's approach disregards the solemnity of his admission of guilt and the spirit of the plea agreement in favor of fortuitous timing. If *Gamble* had been issued approximately one month later and sentencing had proceeded as originally scheduled, Mr. Hedrick's waiver of his rights to appeal and to collateral attack would have precluded him from using that case to challenge his conviction with a Fourth Amendment argument. *See* Plea Agreement at 7. Instead, Mr. Hedrick simultaneously concedes that he was in possession of a firearm in violation of the charged offense while seeking to exclude tangible evidence of that firearm from a non-existent trial. Under these circumstances, the Court sees little to justify reconsideration of its prior evidentiary decision.

### B.  *Gamble* is Factually Distinct From the Present Case

In any event, *Gamble* would likely not change the Court's prior ruling. There, the D.C. Circuit held that an officer's statement of "[l]et me see your waistband" was a "command" that constituted a seizure of the defendant. *Gamble,* 77 F.4th at 1042–43. Nonetheless, *Gamble* retained the totality of circumstances test for seizure that looks at whether "a reasonable person would have believed that he was not free to leave." *Id.* at 1044. *Gamble* also distinguished commands from questions, *id.* at 1045, and illustrated the difference by identifying a prior Circuit case that held that an officer who merely asked "[c]an I see your waistband?" as a

10

question was not making a command, *id.* (citing *United States v. Gross*, 784 F.3d 784, 788 (D.C. Cir 2015)).

On that point, it is critical that in *Gamble* and unlike here, the district court described the officer's statement as a command, and on appeal the government conceded that it was a command. *Id.* ("Here, though, the government does not contest the district court's considered characterization of Officer Tejada's statement as a command, so we have no occasion to revisit it."). The Court's evidentiary holding in this action did assume that Investigator Madera's alleged statement to "squeeze the bag" was a command, but it did not decide the issue. The Court made plain that "[t]he record, however, is unclear whether such a statement was in the form of a question or a command." Ruling Hr'g Tr., 6:16-17. While Mr. Blackwell testified that Investigator Madera said the words "squeeze the bag," the line of questioning at the hearing did little to establish his tone or whether those words could be considered a question or a command:

> Q: And did the police officers *ask* Mr. Hedrick to do anything with his bag?
> A: Squeeze the bag.
> Q: Did Mr. Hedrick squeeze the bag?
> A: Yes.

Evidentiary Hr'g, 67:25-68:4 (emphasis added).

Without more, it is ambiguous whether an "ask" to do something was a question or a command. Similarly, Mr. Blackwell's only other testimony on this point also gives a limited picture of whether Investigator Madera was making a command when he allegedly said "squeeze the bag":

> Q: Did you inspect the bag?
> A: No, I didn't inspect it. But when they said, Squeeze the bag, you should be able to see what's in the bag if it's being squeezed in your face.

*Id.*, 69:14-17.

11

So while the Circuit has observed that "the very nature of a demand or command—as opposed to a mere question—is that compliance is mandatory," *Gamble*, 77 F.4th at 1045, the Court is skeptical that Mr. Blackwell's testimony and the other record evidence supports the idea that Mr. Hedrick would have felt obligated to comply with Investigator Madera. After all, officers can ask questions if they "do not convey a message that compliance with their requests is required." *Id.* (quoting *Gross*, 784 F.3d at 788). And given that the Court also reviewed comparable cases and determined that "the totality of the circumstances [of the encounter] show that a reasonable person would have believed they were free to leave," Ruling Hr'g Tr., 8:1-4, this assessment of the context of Investigator Madera's statement also indicates that any words he spoke about squeezing the bag were not a command or demand.[5] *See e.g.*, *Gross*, 784 F.3d at 788 (looking to the "totality of the circumstances in this case" in deciding whether an officer's questioning effected a seizure); *United States v. Wood*, 981 F.2d 536, 540 (D.C. Cir. 1992) (distinguishing questions from commands, and looking to the officer's tone, physical movements, place, time of day, and other elements of the encounter).

As a result, this case has a crucial difference from *Gamble*, where it was a settled issue that the officer had made a command to the defendant. 77 F.4th at 1045. The Court's conditional assumption that Investigator Madera did say the words "squeeze the bag" and that it was a command does not displace the actual record evidence, which is both mixed as to whether Investigator Madera spoke the words and, if he did, vague about his intonation and the nature of

---

[5] The Court distinguished both *United States v. Gibson*, 366 F. Supp. 3d 14 (D.D.C. 2018) and *Golden v. United States*, 248 A.3d 925 (D.C. 2021) from this case, finding that "these cases only highlight that courts require a more substantial show of authority than the facts of this case to find that a seizure occurred." Ruling Hr'g Tr., 8:7-10.

his speech. Thus, even if the Court were to reconsider Mr. Hedrick's motion, it sees the present record as distinct from the record that the D.C. Circuit confronted in *Gamble*.

## V.  CONCLUSION

For the foregoing reasons, Defendant Vernon Hedrick's Mot. for Reconsideration of Decision on Mot. to Suppress Tangible Evidence (ECF No. 37) is **DENIED**. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated: December 15, 2023                                                             RUDOLPH CONTRERAS
                                                                                                          United States District Judge